**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3500
_____

UNITED STATES OF AMERICA

v.

BLAINE R. HANDERHAN,
Appellant

_____

Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Cr. Action No. 10-cr-00298-1)
District Judge: Honorable William W. Caldwell

_____

Argued September 11, 2013
_____

Before: RENDELL, JORDAN, GREENAWAY, JR., *Circuit
Judges*.

(Opinion Filed:  January 7, 2014)
_____

James T. Clancy, Esq. [ARGUED]
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108
    *Counsel for Appellee The United States of America*


Philip Gelso, Esq. [ARGUED]
Briechle & Gelso
63 Pierce Street
Kingston, PA 18704

Marissa A. McAndrew, Esq.
Briechle & Gelso
41 North Main Street
Suite 310
Carbondale, PA 18407

Matthew R. Gover, Esq.
Brian W. Perry, Esq.
Gover, Perry & Shore
2411 North Front Street
Harrisburg, PA 17110
    *Counsel for Appellant Blaine Handerhan*

——————————

OPINION

——————————


GREENAWAY, JR., *Circuit Judge*.

Blaine Handerhan ("Appellant" or "Handerhan") appeals the District Court's August 21, 2012 judgment of sentence of 96 months' imprisonment. Appellant argues that the sentence he received for possessing thousands of images of child pornography was both procedurally and substantively unreasonable. Specifically, Appellant contends that the District Court erred by failing to (a) explicitly address his request for a downward departure based on mental health issues and (b) meaningfully consider the factors enumerated in 18 U.S.C. § 3553(a), including Appellant's arguments regarding the unreasonable nature of the relevant Sentencing Guidelines provision, U.S.S.G. § 2G2.2. Although we affirm the District Court's sentence, finding it both procedurally and substantively reasonable, we feel compelled to remind the District Court that motions seeking departure should be formally decided. A reviewing court must know from the record whether a district judge is indeed exercising his or her discretion.

## I. FACTUAL AND PROCEDURAL HISTORY

In late 2005, an undercover investigation by the Internet Crimes Against Children Task Force–a joint organization of federal, state, and local law enforcement agencies–determined that a single computer was sharing over "1400 images and/or video files of child pornography" through a file-sharing program. (Presentence Investigation Report ("PSR") ¶ 5.) The Pennsylvania State Police were notified and conducted an investigation and learned that the computer in question was located in the residence of Handerhan, a retired Lieutenant, who served for 25 years in the Mount Carmel Police Department. Thereafter, a search warrant was executed on Handerhan's residence and his computer was seized. An evaluation of the computer

revealed that it contained over 6,000 images and video files of child pornography, including images of pre-pubescent children and other images depicting sadomasochism and bondage. In addition, the forensic analysis of Handerhan's computer revealed that he had configured Shareza, a file sharing program, in order to distribute some of the images.

Appellant was charged in a two-count indictment in October 2010 with distribution of child pornography, in violation of 18 U.S.C. §§ 2256(8)(A) and 2252A(2)(a), and with possession of child pornography, in violation of 18 U.S.C. § 2256(8)(A). Handerhan subsequently pled guilty to a single count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). In the plea agreement, the Government agreed to dismiss the distribution charge and recommended that Appellant "receive a three-level reduction in the defendant's offense level for acceptance of responsibility." (App. 71.) The Government otherwise reserved the right "to recommend a sentence up to and including the maximum sentence of imprisonment and fine allowable, together with the cost of prosecution." (*Id.* at 72.)

Prior to Handerhan's sentencing, both parties were given copies of the PSR. The probation officer calculated Appellant's guidelines range as being 151 to 188 months' imprisonment based on an offense level of 34 and a criminal history category of 1.[1] "[H]owever, because the statutory

---

[1] The offense level calculation reflected several additions to the base offense level, including the fact that some of the material involved pre-pubescent minors, that the offense involved portrayals of "sadistic or masochistic conduct or other depictions of violence," that "the defendant used a computer for the possession" of the child pornography, and

maximum penalty [was] 10 years, the guideline sentence" was set at 120 months. (PSR ¶ 63.) The PSR also stated that there were no identifiable "factors warranting a departure from the guideline range." (*Id.* at ¶ 79.) Appellant filed a sealed Sentencing Memorandum in response, requesting that "the Court apply a downward departure" and arguing that a sentence of 60 months was more appropriate. (App. 28, 38.) Appellant requested the downward departure under U.S.S.G. § 5H1.3[2] and argued that the proposed 120-month sentence was unreasonable in light of the 18 U.S.C. § 3553(a) factors.[3]

---

that "the offense involved 600 or more images." (PSR ¶¶ 18-23.)

[2] In relevant part, U.S.S.G. § 5H1.3 states: "Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines."

[3] In relevant part, 18 U.S.C. § 3553(a) includes the following factors: "(1) [T]he nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed [in light of the defendant's and society's interests]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for [the applicable category of offenses]; (5) any pertinent policy statement [by the Sentencing Commission]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

Appellant argued that a downward departure pursuant to U.S.S.G. § 5H1.3 was appropriate "in light of the fact that he suffers from a mental health condition and has taken extraordinary measures to rehabilitate himself." (*Id.* at 28.) According to Appellant, and supported by various medical documents submitted to the District Court, he suffers from obsessive compulsive disorder coupled with an "internet addiction," manifesting itself in an uncontrollable urge to download and catalogue pornographic images of all kinds. (*Id.* at 17-18.) Appellant's mental illnesses resulted in Appellant giving into the urge to download thousands of child pornographic images and video, and to store and "meticulously catalogue[]" them on his home computer. (*Id.* at 18.) Shortly after the police searched his home, Appellant sought treatment from multiple psychiatrists, searching for the most effective treatment. According to all of his psychiatric evaluations, Appellant did not exhibit any sexual attraction to children, nor did he apparently seek out the images in question for purposes of gratifying his sexual urges. (*See id.*)

Appellant also argued that the proposed Guidelines sentence was inappropriate in light of the § 3553(a) factors. Specifically, Appellant argued that the sentence was inappropriate because: (a) he recognized that what he did was wrong; (b) he acted under compulsion of his mental disorder; (c) he sought treatment for his malady; (d) the Government's proposed sentence was appropriate in the "ordinary" case, not in Appellant's unique circumstances; and (e) Appellant's status as a father and devoted son militated against his long-term incarceration. (*See id.* at 33-38.)

The District Court subsequently held a sentencing hearing in August 2012. At the hearing, both parties argued

6

the merits of Appellant's request for a downward departure, as well as the evaluation of the § 3553(a) factors, with the Government suggesting that if the District Court were inclined to agree, that it should "exercise its discretion to deny the downward departure, but consider all of [Appellant's arguments] in the context of the § 3553(a) factors for a variance." (*Id.* at 120.) After both sides made their respective arguments, the District Court ruled as follows:

> Well, needless to say, this is a very very unfortunate situation for you, Mr. Handerhan. You did the right thing at least, you acknowledged your participation in this ugly crime. And what I am concerned about in all of these child pornography cases is the fact that it is people who view this and download it and distribute it or just look at it, they're the people who perpetuate the ongoing abuse of children who are the subjects of these pornography images.
>
> . . . .
>
> The Government is asking for a 10-year sentence, which is the statutory maximum and is less than the guidelines would provide for this offense. In considering [Appellant's counsel's] presentation, I am somewhat impressed under 3553(a) factors that a variance could be granted in this case based upon what we've discussed here this morning and those factors that have been mentioned.

Considering all of those factors, I will make a slight variance from the statutory maximum penalty in imposing a sentence this morning. I'm sorry that you have to endure imprisonment, and I hope that you will be able to do that and come back to the community and be a law-abiding citizen.

Pursuant to the Sentencing Reform Act, it is the judgment of the Court on Count 2 that the Defendant, Blaine R. Handerhan, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 96 months.

(*Id.* at 125-27.)

Appellant subsequently appealed his sentence, arguing that it was procedurally and substantively unreasonable. Specifically, Appellant posits that the District Court's failure to explicitly rule on his request for downward departure, and its allegedly inadequate treatment of the § 3553(a) factors, renders his sentence procedurally unreasonable. According to the Appellant, this, in turn, renders his sentence substantively unreasonable as well.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

We review both the procedural and the substantive reasonableness of a district court's sentence for abuse of

8

discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007); *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc). "Appellate review is limited to determining whether the sentence is reasonable." *United States v. Friedman*, 658 F.3d 342, 360 (3d Cir. 2011) (citation omitted). Our review for reasonableness proceeds in two stages. First, we must "ensure that the [D]istrict [C]ourt committed no significant procedural error, such as failing to calculate (or improperly calculating) the [U.S. Sentencing] Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Gall*, 552 U.S. at 51. Second, if we find that the sentence is procedurally sound, we then consider if it is substantively reasonable given the "totality of the circumstances." *Id.* If the sentence is within the applicable Guidelines range, we may presume that the sentence is reasonable. *Rita v. United States*, 551 U.S. 338, 350-51 (2007). "[I]t is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence." *Solem v. Helm*, 463 U.S. 277, 290 (1983).

## III.   ANALYSIS

### A.      *Procedural Unreasonableness*

When imposing a sentence, a district court must follow a three-step process. First, "[c]ourts must determine to calculate a defendant's Guidelines sentence precisely as they would have before [United States v. Booker, 453 U.S. 220 (2005)]." *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (citations omitted). Second, district courts "must *formally rul[e]* on the motions of both parties, and *stat[e] on*

*the record* whether they are granting a departure and how that departure affects the Guidelines calculation, and tak[e] into account our Circuit's pre-*Booker* case law, which continues to have advisory force." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted) (emphasis added). Third, districts courts must "exercise[] [their] discretion by considering the relevant [§ 3553(a)] factors in setting the sentence they impose regardless [of] whether it varies from the sentence calculated under the Guidelines." *Id.* (alterations in original) (citation omitted) (internal quotation marks omitted). "During the third step, district courts should engage in 'a true, considered exercise of discretion, including a recognition of, and response to, the parties' non-frivolous arguments.'" *United States v. Friedman*, 658 F.3d 342, 359 (3d Cir. 2011) (quoting *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006)).

These steps ensure "that the District Court's decision-making process is both logical and fair," and we therefore recommend that the District Court "consider the steps separately and sequentially." *Id.* at 361. Failure to adhere to this process may result in a procedurally unreasonable sentence, *United States v. Merced*, 603 F.3d 203, 214-15 (3d Cir. 2010), and may even "risk the substantive reasonableness of any decision [the district court] reache[s]," *United States v. Goff*, 501 F.3d 250, 256 (3d Cir. 2007).

Appellant contends that the District Court's sentence was procedurally unreasonable because it failed to adhere to the second and third steps of the *Gunter* process.[4] Appellant

---

[4] Appellant does not challenge the District Court's initial calculation of his Guidelines range pursuant to step one of the *Gunter* process. At the sentencing hearing, Appellant's

also challenges his sentence as substantively unreasonable, arguing that the District Court's alleged procedural errors render the substance of his sentence unreasonable or that, in the alternative, "no reasonable sentencing court would have imposed the same sentence on [Appellant] for the reasons the district court provided." *Tomko*, 562 F.3d at 568 (3d Cir. 2009). For the reasons discussed below, we affirm the District Court's sentence and find it both procedurally and substantively reasonable.

**1.   *Gunter* Step 2 - Failure to Formally Rule On Downward Departure Request**

Appellant challenges his sentence by asserting that the District Court did not formally rule on his motion for a downward departure. As previously stated, step two of the *Gunter* process requires district courts to "formally rul[e] on the motions of both parties, and stat[e] on the record whether they are granting a departure . . . ."*Gunter,* 462 F.3d at 247 (internal quotation marks omitted). The need for a clear ruling is particularly acute regarding a motion for a downward departure from the Guidelines because "[o]ur Court's jurisdiction to review the denial of such departures depend[s] on a district court's reason for denial." *Jackson*, 467 F.3d at 838. That is, if the court denied the motion because it "believed [it] could not legally depart on the ground asserted, we [have] jurisdiction to review for legal error; if, instead, [the court] recognized [its] authority to depart but chose not to do so, we lack[] jurisdiction to review that decision." *Id.* at 838.

---

attorney conceded that they did not wish to "dispute a point addition on the guidelines calculation," because "it is really not important for today's purposes." (App. 109.)

As a result, we generally require that district courts "state expressly whether [their] denial of [a] defendant's departure request was based on legal or discretionary grounds." *Id.* at 838-39 (internal quotation marks omitted) (noting that the rule is still applicable, even post-*Booker*). Thus, where the "district court's stated reasons are ambiguous–so that the record does not reflect whether the court's denial is based on legal or discretionary grounds–then the proper remedy is to vacate the sentence and remand for the district court to clarify the basis for its ruling." *Stevens,* 223 F.3d at 247 (3d Cir. 2000) (internal quotation marks omitted).

The admonition against ambiguous rulings on downward departure requests is not ironclad, however. Both before and after *Booker*, this Circuit has recognized its ability to "infer meaning from the District Court's actions" in a case. *Jackson*, 467 F.3d at 840. Thus, even where the district court does not explicitly rule on a motion for downward departure, this Court has held that it will "not remand for re-sentencing when the Government's arguments to the district court concede[d] the plausibility of the downward departure." *Id.* at 839 (alteration in original) (citations omitted) (internal quotation marks omitted). In *Jackson*, and in similar circumstances, we found it "quite likely that the district court's refusal to depart . . . was discretionary, and thus [this Court could] infer that the departure motion had been denied by the [district] court in recognition of its ability to depart had it chosen to do so." *Id.* at 839 (citations omitted) (internal quotation marks omitted). While we have applied this rationale several times since the 2006 opinion in *Jackson*, "having to infer the District Court's thinking is not our

12

preferred course." *Id.* at 840 (internal quotation marks omitted).

In this case, Appellant argues that the District Court erred in failing to (1) acknowledge that it had discretion to depart; (2) consider the substance of Appellant's downward departure request; and (3) formally rule on that request. (Appellant Br. 23.) "By failing to consider and formally rule upon Mr. Handerhan's argument that the addiction itself was sufficiently contributory to his commission of the offense to entitle him to a downward departure, the District Court created no record to support a thorough consideration of [the] motion for downward departure." (*Id.*) We agree with the Appellant that the District Court did not explicitly deny Appellant's request for a downward departure. Nonetheless, we are able to infer that the District Court used its discretion because it was fully informed on the issues prompting the request, and the Government requested that "the Court exercise its discretion to deny the downward departure . . . ." (App. 120.) This demonstrates that the Government acknowledged that the District Court had discretion to grant a possible departure. As a result, we find that the District Court did use its discretion to deny the request for a downward departure, choosing instead to grant a slight variance.

As previously noted, this Court's jurisdiction to consider Appellant's arguments depends on the basis for the District Court's ruling. *See Stevens*, 223 F.3d at 247-48 (3d Cir. 2000). "If the ruling was based on the district court's belief that a departure on the grounds proffered by the defendant was legally impermissible, we have jurisdiction to determine whether the district court's understanding of the law was correct. By contrast, if the district court's ruling was based on an exercise of discretion, we lack jurisdiction." *Id.*

13

at 247 (citation omitted) (internal quotation marks omitted). Therefore, it is imperative that this Court understand the basis for the District Court's ruling. In this case, because we find that the District Court utilized its discretion, "[w]e do not have jurisdiction to review [the] discretionary decision[] by [the] district court[] to not depart downward." *United States v. Vargas*, 477 F.3d 94, 103 (3d Cir. 2007) (citation omitted).

### 2. *Gunter* Step 3 – Procedural Unreasonableness

While we do not have jurisdiction to review the District Court's resolution of Appellant's downward departure request, "[o]ur lack of review on this issue . . . goes no further than step two of *Gunter*, as step three requires our review of the sentence against the several § 3553(a) factors, only one of which is the Guidelines range." *Jackson*, 467 F.3d at 839 n.6. The District Court "need not 'discuss and make findings as to each of the § 3553(a) factors,'" *Id.* (quoting *United States v. Kulick*, 629 F.3d 165, 176 (3d Cir. 2010)), but we do inquire as to whether the District Court gave "'meaningful consideration to the relevant § 3553(a) factors.'" *Id.* (quoting *United States v. Wise*, 515 F.3d 207, 216 (3d Cir. 2008)). *See also United States v. Lofink*, 564 F.3d 232, 238 n.13 (3d Cir. 2009) ("Although district courts must consider all of the § 3553(a) factors, they need not explicitly comment on every factor if the record makes clear the court took the factors into account in sentencing." (internal quotation marks omitted)). Though we "can articulate no uniform threshold for sufficiency because of the fact-bound nature of each sentencing decision, we certainly always demand more than a rote recitation of the § 3553(a) factors . . . ." *Tomko*, 562 F.3d at 567.

Here, Appellant argues that the District Court neglected to address his arguments "(1) that the Sentencing Commission did not employ its characteristic empirical approach in setting guideline ranges for crimes involving child pornography and (2) that the enhancements in the Sentencing Guidelines, which were applicable in this case, are inherent in almost all offenses involving child pornography." (Appellant Br. 25.) The Government contends that while "the district court did not recite every sentencing factor verbatim, the record clearly demonstrates that the court took all of the factors into consideration." (Appellee Br. 15.)

We find that the District Court did consider § 3553(a)(1): "the nature and circumstances of the offense and the history and characteristics of the defendant." The District Court took into account that Appellant had been a productive member of society having served as a police officer, as well as the fact that he made "a serious and sincere effort to overcome" his mental illnesses by seeking therapy. (*See* App. 126.)

Likewise, the District Court also considered many aspects of § 3553(a)(2): "the need for the sentence imposed [in light of the defendant's and society's interests]." The District Court considered the broader societal ills flowing from the possession of child pornography, and in large measure the District Court focused its sentencing discussion on the need to "reflect the seriousness of the offense," 18 U.S.C. § 3553(a)(2)(A), and to "deter others generally from engaging in this crime." (*See* App. 125-26.) This suggests that the District Court also considered § 3553(a)(3) – "the kinds of sentences available."

The Government also argues that the District Court adequately considered two other factors – § 3553(a)(4) and § 3553(a)(6). The first, § 3553(a)(4), looks to the "kinds of sentence and the sentencing range established for [the applicable category of offenses]." The District Court observed that although Handerhan's sentence was statutorily capped at ten years, the advisory guidelines range for his offense before the statutory cap was actually higher." (*Id.*) The second, § 3553(a)(6), looks to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Government posits that the following District Court statement suffices: "[E]ight years . . . is a long time . . . . But in light of all the circumstances that I have learned in this case, in fairness to the other people that I sentence . . . a penalty that is significant is appropriate in this case." (*Id.* at 131.) We agree that this statement appears to consider § 3553(a)(6) because of the reference to the appropriateness of the sentence as it relates to similarly situated defendants sentenced by this District Court.

Appellant also argues that his sentence is procedurally unreasonable "because the District Court failed to consider and formally rule upon Mr. Handerhan's motion for downward variances based on flaws in the sentencing guidelines." Specifically, "the Sentencing Commission's failure to enact guidelines based on empirical research, focusing instead on Congressional directives, as is not its institutional role." (Appellant Br. 13.) Appellant argues that *United States v. Sevilla*, 541 F.3d 226 (3d Cir. 2008) should govern. In *Sevilla*, this Circuit found the sentencing procedure of the district court to be unreasonable because it failed to address the defendant's arguments regarding his

childhood and the crack/powder disparity within the Sentencing Guidelines. *Id.* at 232.

However, as Appellant acknowledges, the District Court did state, "I think that some of these penalties for this offense are more serious than they need to be." (App. 131.) The District Court then went on to say, "But in light of all the circumstances that I have learned in this case . . . I think . . . that a penalty that is significant is appropriate in this case." (*Id.*) This demonstrates, albeit not as formally as we would prefer, that the District Court did consider arguable problems in the sentencing guidelines but found the sentence, when coupled with the variance ultimately granted, to be appropriate.

Here, the District Court's consideration of the § 3553(a) factors appears to be more comprehensive than in *Jackson* where we found sufficient the district court's statement that it considered the defendant's prior convictions for crimes of violence, circumstances of defendant's upbringing, and financial circumstances was sufficient discussion of the § 3553(a) factors. *Jackson*, 467 F.3d at 841-42.

The District Court said, "I am somewhat impressed under the § 3553(a) factors that a variance could be granted in this case based upon what we've discussed here this morning and those factors that have been mentioned. Considering all of those factors, I will make a slight variance from the statutory maximum penalty . . . ." (App. 126.) The District Court granted Appellant a 24-month downward variance, in apparent recognition of Appellant's mental health issues and his efforts at treatment, stating, "I think you have made an effort to overcome your addiction." (*Id*. at 125-26.) We find

17

that the District Court's consideration of the § 3553(a) factors was "more than a rote recitation of the § 3553(a) factors . . . ." *Tomko*, 562 F.3d at 567. Accordingly, the District Court did not err in its consideration of the § 3553(a) factors applicable to Appellant. The totality of the record demonstrates that at *Gunter* step three, all of the factors were sufficiently considered by the District Court and reflected in the variance ultimately granted. We find that the District Court did not commit procedural error in its sentencing.

## B. *Substantive Unreasonableness*

Having concluded that the District Court committed no procedural error, we now review the substantive reasonableness of the sentence under an abuse of discretion standard. *Tomko*, 562 F.3d at 567. We will affirm a procedurally sound sentence as substantively reasonable "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.* at 568. In reviewing the substantive reasonableness of a sentence, we look to "whether the final sentence, wherever it may lie within the permissible statutory range, was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011). "We focus on the totality of the circumstances, and the party challenging the sentence bears the burden of proving the sentence's unreasonableness." *Friedman*, 658 F.3d at 360.

Appellant argues that "based upon the totality of the circumstances in this case, no reasonable sentencing court would have imposed a sentence of 96 months considering all of the 18 U.S.C. § 3553(a) factors as advocated by [Appellant] at sentencing." (Appellant Br. 37.) In the instant

18

case, the correct procedure was employed and a reasonable conclusion reached given the evidence presented. The facts do not suggest that no other court would impose a similar sentence. Appellant is a former police officer who–by his own admission–was aware that the images he downloaded were illegal. (App. 18 (noting, in the Sentencing Memorandum, that Appellant "knew child pornography was wrong").) Moreover, his avowed explanation–that his obsessive compulsive disorder, coupled with his "internet addiction" drove him to download thousands of images of child pornography–does not account for why some of those images were then subsequently shared online by Appellant via the Shareza software. (*Id.* 17-18.) Finally, while it is true that Appellant sought treatment for his condition (a factor that the District Court considered in sentencing Appellant), he expended such efforts only *after* his arrest. (*Id.* 17-22.) Due to these factors, we find that a reasonable sentencing court could have imposed the same sentence upon Appellant.

Furthermore, reviewing courts are entitled to presume that a sentence within the advisory Guidelines is reasonable. *Rita*, 551 U.S. at 364. In this case, Appellant received a below Guidelines sentence of 96 months' imprisonment. Under the deferential standard of review, the challenge to the length of imprisonment fails.

## VI.   CONCLUSION

Today we affirm the District Court's ruling and find that Handerhan's sentence was neither procedurally nor substantively unreasonable. Nonetheless, having to infer that the District Court used its discretion to deny a downward departure on the basis that the Government addressed the downward departure is not our "preferred course." *Jackson,*

19

467 F.3d at 839-40. We should not have to venture down that path only to conclude that we have no jurisdiction to review the district court's discretionary denial of a downward departure. We want to be certain of the reason a district court judge denied a downward departure. We have provided specific guidance in *Gunter* and its progeny and that precedent must be followed.