NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No. 19-3792

———————————

UNITED STATES OF AMERICA

v.

DERRICK BAER,
                              Appellant

———————————

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal Action No. 2:15-cr-00417-001)
District Judge: Honorable Claire C. Cecchi

———————————

Submitted Under Third Circuit L.A.R. 34.1(a)
January 11, 2021

Before: AMBRO, KRAUSE and PHIPPS, Circuit Judges

(Opinion filed: January 20, 2021)

## OPINION[*]

AMBRO, <u>Circuit Judge</u>.

Appellant Derrick Baer appeals his conviction on one count of knowing receipt and attempt to receive child pornography and one count of knowing possession of material that contained at least three images of child pornography. Baer also appeals his within-Guidelines sentence of 168 months. For the reasons stated below, we affirm Baer's conviction and sentence.

## I.

In May 2010, Baer reported the death of his then-girlfriend, Lorianne Kosnac. Upon arriving at their home, the police received oral and written consent from Baer to conduct a "complete search" of the residence and to remove "any documents, materials, things or other property." While the search was ongoing, Kosnac's sister called police to express concerns that Baer may be responsible for Kosnac's death. The sister told police the following:

1. A few months before her death, Kosnac discovered jars containing washcloths that smelled like ammonia under her bed. From that incident, Kosnac learned that Baer previously used homemade chloroform to render her unconscious and perform sex acts on her.

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2. When confronted, Baer admitted to her that (a) he had used chloroform on Kosnac, (b) he learned to make chloroform on the internet, and (c) he had a problem with porn.

3. Baer and Kosnac's daughter told Kosnac that she had awoken once to find Baer standing over her with a washcloth.

4. Kosnac said Baer "had a problem with kiddy porn" and had "been on the internet and . . . pulled all kinds of stuff off there."

Kosnac's sister also stated that her own minor daughter had alleged Baer once took a picture of her in the shower.

After this interview, law enforcement returned to interview Baer while the search of his house was ongoing. Baer denied having chloroform in the house and researching how to make chloroform on his computer. But he did not object to the search or removal of his computers and expressly stated that law enforcement would not find any evidence of chloroform research on the devices. Officers then asked Baer about a rag found in his house, and he responded that the rag would not test positive for chloroform (law enforcement later confirmed that the rag had chloroform on it). In addition to the rag, law enforcement seized many devices from Baer's residence, including disks labeled "Derrick's eyes ONLY," "pics incriminating," and "porn."

In the months after the search, Baer's daughter confirmed in an interview with law enforcement that she had once awoken to her dad standing over her with a washcloth that smelled like paint. The medical examiner also issued its report and concluded that

3

"exposure to chloroform" was a "[c]ontributory [c]ondition" of Kosnac's death, although the official cause of death was a heart condition. App. 25–26.

One of the primary officers on the case, Sgt. Robb, sought a search warrant to analyze Baer's computers, but the prosecutor assigned to the case denied Robb's request.[1] In August 2011, after a new prosecutor was assigned to the case, Robb obtained a warrant from New Jersey state court. About a month later, Robb submitted a request to a local computer forensics laboratory for forensic examination of Baer's devices. The laboratory notified Robb that it was ready to begin its examination in July 2012, and Robb brought the devices to the lab that same day. The forensic analysis report, issued in October 2012, found thirteen confirmed—and hundreds of possible—images of child pornography. In November 2012, police charged Baer with one count of possessing child pornography, and a grand jury later indicted him.[2] The FBI soon launched their own investigation and, in 2015, the U.S. Attorney's Office for the District of New Jersey charged Baer with the two counts at issue in this appeal. A federal grand jury later indicted Baer on these charges.

During these proceedings, Baer's ex-girlfriend (whom Baer began dating after Kosnac died), Carly Jones, gave police an external hard drive that belonged to Baer (the "Hard Drive"). Jones made a passing remark about child pornography but did not expressly assert that the drive contained explicit material. Then, in March 2017, Jones's eleven-year-old son reported that Baer had sexually abused him and shared pictures of this abuse with

---

[1] Sgt. Robb testified that the original prosecutor was skeptical about whether Baer's use of chloroform for sex was consensual.
[2] These charges were dropped after the U.S. Attorney's Office filed federal charges.

4

friends. Federal law enforcement soon learned of the allegation and obtained a warrant to search the Hard Drive, discovering child pornography.

In 2019, a federal jury convicted Baer for both receiving and possessing child pornography. The District Court sentenced him to 168 months' imprisonment and lifetime supervision. Baer now appeals (i) the District Court's denial of his motion to suppress the devices and images seized from his home in 2010 and the images collected from the Hard Drive; (ii) the District Court's denial of his request for a *Franks* hearing based on factual inaccuracies in the search warrant affidavit; (iii) the District Court's decision to admit three pieces of evidence; and (iv) the Court's refusal to grant a downward variance on his sentence.

## II.

### A.    Motion to Suppress Seized Devices and Media

Baer first argues that the devices and resulting media should have been suppressed because the affidavit used to search his devices failed to establish probable cause and that delays in investigating and searching the devices violated the Fourth Amendment. We review the District Court's underlying factual findings for clear error and the Court's application of the law to those facts *de novo*. *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

Here, none of the searches required probable cause because they were conducted with the consent of the owner. Looking first to the devices seized from Baer's residence, Baer consented to a full search of his residence without limitation and never sought to revoke his consent or to have the devices returned. *Schneckloth v. Bustamonte*, 412 U.S.

218, 219 (1973) (noting that one exception to "the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent"). To the extent Baer complains of the Government's failure to return his devices, his argument fails because he never sought their return. Defendants who never seek the return of the property cannot argue that delay violated the Fourth Amendment. *United States v. Stabile*, 633 F.3d 219, 235–36 (3d Cir. 2011) (citing *United States v. Johns*, 469 U.S. 478, 487 (1985)).

Jones also gave express consent for police to search the Hard Drive, and her joint access and subsequent control of the device gave her the authority to do so. *See Stabile*, 633 F.3d at 233 (providing that a cohabitant with joint access and control over computers had authority to consent to warrantless seizure of hard drives under the Fourth Amendment). Jones also never revoked or limited her consent or sought the return of the Hard Drive.

Further, to the extent officers needed the August 2011 warrant to search Baer's devices, the warrant was supported by probable cause. Probable cause is established if there is a "fair probability" that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, law enforcement had evidence from multiple sources confirming the fair probability that the devices contained evidence of a crime. In his affidavit, Sgt. Robb extensively referenced various witnesses' allegations concerning Baer's research and use of chloroform, as well as the chloroform rag officers discovered in Baer's home. Robb also recounted witness allegations that Baer had "a problem with kiddy porn," had taken a picture of his minor niece in the shower, and had attempted to use chloroform on his daughter. App. 134, 139. The affidavit also

6

referenced Baer's large collection of electronic media and the suspicious labels on that media. While some of the evidence referenced in the affidavit is hearsay, hearsay statements can support a finding of probable cause if law enforcement has a "substantial basis for crediting the hearsay." App. 241–42. Here, many of the hearsay statements from various witnesses either directly or indirectly corroborated each other (*e.g.*, allegations that Baer had an interest in child pornography were corroborated by Baer's alleged attempts to victimize his daughter and Kosnac's niece), and physical evidence in the home also corroborated those statements. Thus, law enforcement had a substantial basis for crediting the hearsay, and the affidavit established a fair probability that the seized devices had evidence of the crimes for which law enforcement was investigating.

## B. Denial of *Franks* Hearing Request

Baer also argues that the District Court erred in denying his motion for a *Franks* hearing because inaccurate statements by Sgt. Robb in the search warrant affidavit merited a hearing. *See Franks v. Delaware*, 438 U.S. 154 (1978) (establishing specific review for allegations of false testimony by police in affidavits establishing cause for a warrant). We have not yet determined the standard of review that applies to a district court's denial of a *Franks* hearing. *See United States v. Aviles*, 938 F.3d 503, 509 n.3 (3d Cir. 2019) (declining to adopt a standard because conclusion is the same under any standard).

Baer, however, would lose even under a fresh review. Two prongs must be satisfied for a defendant to obtain a *Franks* hearing: (1) "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit"; and (2) "the allegedly false statement is

7

necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. The District Court properly decided that the inaccuracies in the affidavit—which included minor inaccuracies in quoted witness statements—were inadvertent and accurately conveyed the information. Further, the alleged errors are insufficient to meet the second prong. Even if the witness statements were inaccurate, the suspicious nature of the labels on the devices and the discovery of a chloroform-soaked rag in Baer's home also supported probable cause. And while Baer makes much of Robb's misrepresentations that he had worked on other media-related child pornography investigations in the past, this minor inconsistency does not affect the probable-cause analysis because Robb had significant evidence, as previously discussed, that Baer's devices may have contained evidence of child endangerment, child pornography, and/or criminal homicide. Baer was therefore not entitled to a *Franks* hearing.

### C. Abuse of Discretion in Admitting Evidence of Baer's Conduct

Baer argues that the District Court abused its discretion in admitting certain evidence used to show that Baer used the computer on which child pornography was found and that his possession of the media was not accidental. He takes issue with the admission of three pieces of evidence: (1) testimony that he photographed Kosnac's niece showering; (2) recordings of him admitting to using his computer to research chloroform recipes; and (3) child pornography found on the Hard Drive.

#### 1. *Testimony that Baer photographed Kosnac's niece showering*

The District Court admitted testimony by Kosnac's niece for the purpose of proving that Baer is sexually attracted to children and thus intentionally obtained the illicit media

8

found on his devices. Baer contends that the evidence was unduly prejudicial under Federal Rule of Evidence 403. When a district court conducts an on-the-record weighing of probative value against unfair prejudice, its evidentiary decision is reviewed for abuse of discretion and is thus entitled to great deference. *United States v. Lacerda*, 958 F.3d 196, 223 (3d Cir. 2020). We agree with the District Court that the risk of prejudice was tempered because the niece would be testifying as a teenager, not as her eight-year-old self from the incident; her testimony would be less inflammatory than other evidence that would be heard at trial; and her evidence was not any more disparaging than other evidence necessary to the trial. Thus the District Court did not abuse its discretion in admitting this evidence.

2. *Recordings of Baer admitting to using his computer to research chloroform recipes*

Recordings and testimony from Noel Gowran (a friend of Jones) were admitted under Rule 404(b).[3] This evidence showed that Baer came to Gowran's house and demonstrated on Gowran's computer how Baer found chloroform recipes. The Government sought to admit this evidence, along with evidence that Baer researched chloroform recipes on his own computer a month before child pornography files were saved on that computer, to prove that Baer had indeed used the computer on which child pornography was found. In short, the Government needed this evidence to rebut the defense that Baer did not use the computer—it did not use the evidence to show he used

---

[3] To be admissible under Rule 404(b), other acts "must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it." *United States v. Green*, 617 F.3d 233, 249 (3d Cir. 2010). We conduct a plenary review of whether evidence falls within the scope of Rule 404(b). *Id.* at 239.

chloroform, and the evidence omitted any mention of Kosnac or Baer's intent for the use of the chloroform.

This evidence has a proper purpose and is relevant. The Government sought to use the evidence to prove that Baer had used his computer shortly before the child pornography was downloaded. As the District Court observed, the "obscure topic of the search," how to make chloroform, "ha[d] the potential to significantly narrow the pool of possible people who may be responsible for the alleged child pornography." App. 891. Furthermore, the evidence was highly probative, as Baer's use of the computer was at the heart of the case. Finally, prior to trial, the Government offered to inform the jury that the parties had agreed that Baer used the computer on a specific date, without using the word "chloroform," but Baer rejected this offer. The District Court was also prepared to issue a limiting instruction, but Baer requested that it not do so. Baer thus had the opportunity to avoid prejudice, but he refused. The District Court therefore did not err in admitting this evidence.

### 3. Child pornography found on the Hard Drive

Baer further contends that the District Court erred in admitting images collected from the Hard Drive under Rule 403 because they were unfairly prejudicial. The images, which are different from those images that form the basis of the indictment, were admitted under Rule 414: "In a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). Baer does not challenge the evidence's admission under this rule. Nonetheless, he argues that the images were unfairly prejudicial under Rule 403 because (1) the jury could

10

have taken the images as improper character evidence, and (2) the images could have belonged to Jones and thus have little probative value.

This admission was also proper. The District Court found that the images on the Hard Drive were similar to those that formed the basis for Baer's indictment, as both depicted children under the age of fourteen and were all found within a four-year period. The images were relevant because they spoke to Baer's knowing possession of the images for which he was charged, even after law enforcement seized his original devices. These facts sufficiently tie the images to Baer, thus making the evidence probative, even though Jones had possession of the Hard Drive at one time. Further, the risk of prejudice was reduced because the images from the Hard Drive were no more shocking than the other images and videos introduced at trial. We therefore agree with the District Court that this evidence had significant probative value, and the danger of unfair prejudice did not outweigh that value. Moreover, in cases where evidence of a past sexual offense admitted under Rule 414 is substantially similar to the acts for which the defendant is being tried, "it is Congress's intent that the probative value of the similar act be presumed to outweigh Rule 403's concerns." *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 144 (3d Cir. 2002). The Court thus did not abuse its discretion in admitting this evidence.

### D. Sentencing

The District Court sentenced Baer to 168 months, the top of the Guideline range of 135 to 168 months. *See* **Appx.1433.** He presented two arguments in his request for a downward departure and variance: the conditions of his pretrial detention and policy-based arguments regarding Sentencing Guidelines for child pornography offenses.

11

Because Baer's sentence is within the Guidelines range, we presume it is reasonable. *United States v. Handerhan*, 739 F.3d 114, 119–20 (3d Cir. 2014). However, even without this presumption, his arguments are unpersuasive. Baer first argues that his sentence was procedurally unreasonable because the District Court failed to acknowledge either argument in its discussion of the 18 U.S.C. § 3553(a) sentencing factors. *See United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (stating that a sentence is procedurally unreasonable if, among other things, the District Court failed to consider the § 3553(a) factors or failed to explain adequately its reasoning). This argument fails because the Court considered these factors when it denied Baer's downward departure and variance requests at sentencing. While the Court did not recite Baer's arguments in summarizing its judgment, it expressly considered and rejected Baer's in-depth arguments on both topics in the context of the § 3553(a) factors. App. 1426–30 (prison conditions), 1441–43 (policy arguments).

Baer next argues that his sentence was substantively unreasonable. *See Tomko*, 562 F.3d at 568 (stating that a sentence is substantively unreasonable if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided"). Here the District Court thoroughly explained its reasons in sentencing Baer at the top of the Guideline range. They included the size of Baer's collection, the steps Baer took to conceal his crime, and the particularly heinous nature of the specific images on his devices. The Court also emphasized that specific deterrence was warranted in this case because Baer compiled a new collection of child pornography on the Hard Drive after law enforcement seized his original devices.

12

Moreover, it denied the Government's motion for an upward variance because the Guideline sentence had already taken the seriousness of Baer's offense into account. Hence his sentence is substantively reasonable.

\* \* \* \* \*

We therefore affirm the District Court's judgment of conviction and sentence.